Slip Op. 19-3

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SHANDONG RONGXIN IMPORT & EXPORT CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Before: Gary S. Katzmann, Judge <br> Court No. 17-00145 |

**OPINION**

[Plaintiff's motion for judgment on the agency record is granted in part and Commerce's Final Results are remanded consistent with this opinion.]

Dated: January 8, 2019

John J. Kenkel, deKieffer & Horgan, PLLC, of Washington DC, argued for plaintiff. With him on the brief were Alexandra H. Salzman, Judith L. Holzman and J. Kevin Horgan.

Melissa L. Baker, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendant. With him on the brief were Chad A. Readler, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director. Of counsel on the brief was Brendan Saslow, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

      Katzmann, Judge: Before this court is the continuing litigation over whether an exporter in a non-market economy has adequately established the independence from governmental control necessary to be assigned a different rate from the countrywide rate. The court once again evaluates the Department of Commerce's ("Commerce") determination in an antidumping duty administrative review of Shandong Rongxin Import & Export Co., Ltd. ("Rongxin") in Certain Cased Pencils From China, 59 Fed. Reg. 66,909 (Dep't Commerce Dec. 28, 1994). Rongxin, an

exporter of pencils from the People's Republic of China, challenges Commerce's determination covering the period of review ("POR") from December 1, 2014 to November 30, 2015. Certain Cased Pencils from China: Final Results, 82 Fed. Reg. 24,675 (Dep't Commerce May 30, 2017) ("Final Results"), and accompanying Issue and Decision Memorandum ("IDM"). Specifically, Rongxin contends that Commerce's determination -- that the Chinese government exerted, or has the potential to exercise, *de facto* control over Rongxin's day-to-day operations (including the selection of management), resulting in the application of the non-market economy countrywide rate and not the separate, company-specific rate sought by Rongxin -- was unsupported by substantial evidence and contrary to law. Rongxin contends that Commerce impermissibly filled alleged gaps in the record without affording it an opportunity to provide information regarding any supposed deficiencies and without considering existing record evidence. Rongxin also argues that it was entitled to a separate rate because it is a mandatory respondent. The court sustains Commerce's Final Results in part but remands other aspects of its determination for reconsideration.

## BACKGROUND

### I. *Legal and Regulatory Framework*

The antidumping statute empowers Commerce to impose remedial duties on imported goods that are sold in the United States at less-than-fair value if it is determined that a domestic industry is "materially injured, or threated with material injury." See 19 U.S.C. § 1673[1]; Diamond Sawblades Manufacturers Coal. v. United States, 866 F.3d 1304, 1306 (Fed. Cir. 2017); Shandong Rongxin Imp. & Exp. Co. v. United States, 42 CIT __, __, 331 F. Supp. 3d 1390, 1394 (2018) ("Rongxin III"). "Sales at less than fair value are those sales for which the 'normal value' (the

---

[1] Subsequent citations to the United States Code are to the official 2012 edition.

price a producer charges in its home market) exceeds the 'export price' (the price of the product in the United States)." Apex Frozen Foods Private Ltd. v. United States, 862 F.3d 1322, 1326 (Fed. Cir. 2017) (quoting Union Steel v. United States, 713 F.3d 1101, 1103 (Fed. Cir. 2013)). "Thus the amount of the antidumping duty is 'the amount by which the normal value exceeds the export price (or the constructed export price) for the merchandise.'" Rongxin III, 331 F. Supp. 3d at 1394 (quoting 19 U.S.C. § 1673).  Upon the request of an interested party, Commerce conducts a yearly administrative review of its antidumping duty determination and recalculates the applicable rate.  19 U.S.C. § 1675(a)(1)–(2); see also Gallant Ocean (Thai.) Co. v. United States, 602 F.3d 1319, 1321 (Fed. Cir. 2010) (citing 19 U.S.C. §§ 1673, 1675(a)); Rongxin III, 331 F. Supp. 3d at 1394 (citing 19 U.S.C. § 1675(a)(1)–(2)).  Commerce "shall determine the individual weighted average dumping margin for each known exporter and producer of the subject merchandise," 19 U.S.C. § 1677f-1(c)(1), but if it is not practicable to do so, Commerce may instead examine a representative group of mandatory respondents, 19 U.S.C. § 1677f-1(c)(2)[2].

---

[2] Specifically, 19 U.S.C. § 1677f-1(c)(2) provides that:

> If it is not practicable to make individual weighted average dumping margin determinations [in investigations or administrative reviews] because of the large number of exporters or producers involved in the investigation or review, the administering authority may determine the weighted average dumping margins for a reasonable number of exporters or producers by limiting its examination to—
>
> (A) a sample of exporters, producers, or types of products that is statistically valid based on the information available to the administering authority at the time of selection, or
>
> (B) exporters and producers accounting for the largest volume of the subject merchandise from the exporting country that can be reasonably examined.

When a proceeding concerns a non-market economy ("NME") country[3] such as China, "Commerce presumes that all respondents to the proceeding are government-controlled and therefore subject to a single country-wide antidumping duty rate." Rongxin III, 331 F. Supp. 3d at 1394 (citing Dongtai Peak Honey Indus. Co. v. United States, 777 F.3d 1343, 1349–50 (Fed. Cir. 2015)); see also Sigma Corp. v. United States, 117 F.3d 1401, 1405 (Fed. Cir. 1997). However, respondents may rebut this presumption and thus establish that they are eligible for a separate rate by demonstrating that they are free from both *de jure* (legal) and *de facto* (factual) government control. Dongtai Peak Honey, 777 F.3d at 1350; Rongxin III, 331 F. Supp. 3d at 1394.

To show that it is free of *de jure* control, a respondent may refer "to legislation and other governmental measures that suggest sufficient company legal freedom." AMS Assocs., Inc. v. United States, 719 F.3d 1376, 1379 (Fed. Cir. 2013). "An exporter can demonstrate the absence of de facto government control by providing evidence that the exporter: (1) sets its prices independently of the government and of other exporters, (2) negotiates its own contracts, (3) selects its management autonomously, and (4) keeps the proceeds of its sales (taxation aside)." Rongxin III, 331 F. Supp. 3d at 1394 (citing AMS Assocs., 719 F.3d at 1379).

"When either necessary information is not available on the record or a respondent (1) withholds information that has been requested by Commerce, (2) fails to provide such information by Commerce's deadlines for submission of the information or in the form and manner requested, (3) significantly impedes an antidumping proceeding, or (4) provides information that cannot be verified, then Commerce shall 'use the facts otherwise available in reaching the applicable determination.'" Dillinger France S.A. v. United States, 42 CIT __, __, Slip Op. No. 18-150 (Oct.

---

[3] An NME country is "any foreign country that [Commerce] determines does not operate on market principles of cost or pricing structures, so that sales of merchandise in such country do not reflect the fair value of the merchandise." 19 U.S.C. § 1677(18)(A).

31, 2018) at 4 (quoting 19 U.S.C. § 1677e(a)). The provisions of § 1677e(a) are known as "facts available," or "neutral facts available," and the guiding principle for choosing what facts to apply is accuracy in the given case. See Agro Dutch Industries Ltd. v. United States, 31 CIT 2047, 2054 (2007) ("However, any gap-filling must later give way to actual information obtained during the course of the proceeding, whether obtained pursuant to section 1677m(d) or received fulfilling the requirements of section 1677m(e)."). This subsection thus gives Commerce a way to fill informational gaps in the administrative record. See Nippon Steel Corp. v. United States, 337 F.3d 1373, 1381 (Fed. Cir. 2003); Dillinger, Slip Op. 18-150 at 4. Commerce "may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available" -- in other words, Commerce may apply adverse facts available ("AFA") -- if it "finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information[.]" 19 U.S.C. § 1677e(b)(1)(A); see also Dillinger, Slip Op. 18-150 at 4. "A respondent's failure to cooperate to 'the best of its ability' is 'determined by assessing whether [it] has put forth its maximum effort to provide Commerce with full and complete answers to all inquiries.'" Dillinger, Slip Op. 18-150 at 4 (quoting Nippon Steel, 337 F.3d at 1382). Before applying facts available, however, Commerce must give respondents an opportunity to correct identified deficiencies in the record, "to the extent practicable . . . in light of the time limits established for the completion of investigations or reviews." 19 U.S.C. § 1677m(d).

## II. *Factual and Procedural History*

In December 1994, Commerce issued an antidumping duty order covering certain cased pencils from China. Certain Cased Pencils from China, 59 Fed. Reg. 66,909 (Dep't Commerce Dec. 28, 1994). In 2002, Commerce established that the countrywide entity rate for China was 114.9%. Notice of Amended Final Results and Partial Rescission of Antidumping Duty

Administrative Review; Certain Cased Pencils from the People's Republic of China, 67 Fed. Reg. 59,049 (Dep't Commerce Sept. 19, 2002).

On December 1, 2015, Commerce gave notice to interested parties that they could request a review of its previous order regarding certain cased pencils from China. Opportunity to Request Administrative Review, 80 Fed. Reg. 75,058 (Dep't Commerce Dec. 1, 2015). In response to the notification, on December 30, 2015, Dixon Ticonderoga Company ("Dixon") requested an administrative review of Rongxin and Wah Yuen Stationery Co. Ltd.[4] P.R. 1. On February 9, 2016, Commerce commenced a review for the POR at issue in the instant case, December 1, 2014 to November 30, 2015. Initiation of Antidumping and Countervailing Duty Administrative Reviews, 81 Fed. Reg. 6832 (Dep't Commerce Feb. 9, 2016). Rongxin submitted such an application on March 29, 2016. P.R. 24, C.R. 11–13.

Commerce issued a Section A questionnaire to Rongxin on July 1, 2016, wherein it solicited information that would allow it to determine whether Rongxin was owned or controlled by the Chinese government. P.R. 29. On August 5, 2016, Rongxin submitted its Section A response to Commerce. P.R. 36–45, C.R. 14–28.

On November 21, 2016, Commerce issued its preliminary decision denying Rongxin's claim for a separate rate. It found that the majority ownership of Rongxin by Shandong International Trade Group ("SITG"), which was in turn owned by the Commerce Department of Shandong Province, a Chinese government entity, was sufficient to establish *de facto* government control. Certain Cased Pencils from the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review and Partial Rescission: 2014-2015, 81 Fed. Reg.

---

[4] Dixon later withdrew its request to review Wah Yuen Stationery Co. Ltd. on May 5, 2016. P.R. 27.

83,201 (Dep't Commerce May 5, 2016). Commerce invited interested parties to file comments, and Rongxin filed its case brief on December 21, 2016. P.R. 72, C.R. 51. In its case brief, Rongxin provided a detailed analysis of its new Articles of Association ("New Articles"), which it argued demonstrated that it was free from Chinese government control. Id. Dixon also submitted a rebuttal brief on December 28, 2016, but Commerce initially rejected it because it contained new facts. P.R. 76–79, C.R. 52–53. Dixon then submitted a revised rebuttal brief on January 17, 2017, which Commerce accepted. P.R. 80, C.R. 54.

On May 30, 2017, Commerce issued its Final Results, which again found *de facto* government control of Rongxin. Certain Cased Pencils from the People's Republic of China: Final Results of Antidumping Duty Administrative Review, 2014–2015, 82 Fed. Reg. 24,675 (Dep't Commerce May 30, 2017), and accompanying Issues and Decision Memorandum ("IDM"). In support of its conclusion, Commerce noted that for eleven out of the twelve months of the POR, Rongxin was majority owned by SITG. IDM at 14. In response to Rongxin's case brief arguments construing the language of the New Articles, Commerce stated that "the provisions of the Articles of Association cited by Rongxin, alone, are insufficient to demonstrate that it operated autonomously from the government in making decisions regarding the selection of management during the POR." Id. at 15. Moreover, Commerce found that it could not rely on the New Articles for its analysis for two reasons. Id. First, the New Articles provided by Rongxin did not cover the first two months of the POR, and so Commerce filled this gap with the Articles of Association in effect for the administrative review covering the POR from 2012–2013 ("Old Articles"). Id. Second, according to Commerce, the record did not "include any evidence to establish that Rongxin's operation in the latter part of the POR, *i.e.*, after the effective date of the Articles of Associations provided by Rongxin, differed from the earlier part" because "the record is devoid of

any information showing how the new Articles of Association operate in light of the conflicting scenarios of majority ownership and one vote per shareholder." Id. Consequently, as facts available Commerce "rel[ied] on [its] findings in the most recently completed administrative review of Rongxin" and found that "[i]n the absence of information to the contrary . . . the Articles of Association in effect were the same as those in effect during 2012-2013." Id. Relying on the Old Articles and its previous interpretation of their language, Commerce determined that Rongxin had not demonstrated an absence of *de facto* Chinese government control. Id.

Rongxin filed a complaint in this court on June 13, 2017, alleging that Commerce's determination was unsupported by substantial evidence and contrary to law.[5] Rongxin filed its 56.2 Motion for Judgment on the Agency Record on March 12, 2018. Pl.'s Br., ECF No. 26. The Government filed its response on May 30, 2018. Def.'s Br., ECF Nos. 27–28. Rongxin filed its reply brief on August 2, 2018. Pl.'s Reply, ECF No. 31. Oral argument was held by this court on November 28, 2018. ECF No. 40.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction over the action pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and 1516a(a)(2)(B)(m). The court sustains Commerce's antidumping determinations, findings, and conclusions unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

---

[5] Rongxin also alleged that China's Protocol of Accession to the World Trade Association contained a provision that it could not be treated as an NME once fifteen years had passed from the date of its accession. On November 17, 2017, the parties jointly-stipulated to the dismissal of the second count with prejudice.

**DISCUSSION**

Rongxin alleges that Commerce's Final Results are unsupported by substantial evidence and contrary to law because Commerce impermissibly applied facts available and privileged its own policy over the requirements of the statute. Specifically, Rongxin alleges that: (1) Commerce could not deny Rongxin a separate rate because Rongxin is a mandatory respondent; (2) any deficiency in the record is due to Commerce's failure to issue supplemental questionnaires pursuant to 19 U.S.C. § 1677m(d); (3) there was no gap in the record for Commerce to fill because Rongxin provided the New Articles, which on their face clearly show how Rongxin operated; and (4) Commerce only considered one of the *de facto* criteria.[6] The court concludes that being a mandatory respondent did not automatically entitle Rongxin to a separate rate and that Commerce was not required to issue supplemental questionnaires pursuant to 19 U.S.C. § 1677m(d). The court also sustains Commerce's use of facts available for the first two months of the POR, but remands for reconsideration Commerce's application of facts available during the time in which the New Articles were in effect.

## I. *Mandatory Respondent*

Rongxin argues that 19 U.S.C. 1677f-1(c) entitles it to a separate rate as a mandatory respondent, regardless of whether its meets Commerce's government control test, and cites China Mfrs. Alliance, LLC v. United States, 41 CIT __, __, 205 F. Supp. 3d 1325 (2017) for support. Because "[r]egulations and policy do not supersede statutory provisions," according to Rongxin,

---

[6] In its IDM, Commerce noted that "[b]ecause we have found that Rongxin did not operate autonomously from the government in making decisions regarding the selection of management, we have not examined whether the Rongxin has established that it operates free of government control with respect to the other three *de facto* factors." IDM at 16. Because the court remands Commerce's determination regarding whether Rongxin established that it selected management autonomously, see infra, the court does not address the issue of the three remaining *de facto* factors at this time.

"Commerce contravened the statute by failing to adhere to the statute by giving precedence to its government-control policy." Pl.'s Br. at 33.

Rongxin's arguments that it was automatically entitled to a separate rate as a mandatory respondent and that Commerce's policy contravenes the statute are unpersuasive. When evaluating whether Commerce's interpretation of a statute is permissible, the court first considers whether "Congress has directly spoken to the precise question at issue." Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842 (1984); see also Rongxin III, 331 F. Supp. 3d at 1405. If so, the court must "give effect to the unambiguously expressed intent of Congress." Chevron, 467 U.S. at 843. If, however, the statute is "silent or ambiguous" regarding the issue at hand, the court evaluates whether Commerce provided "a permissible construction of the statute." Id.; see also Rongxin III, F. Supp. 3d at 1405. Because Commerce possesses "special expertise" in antidumping cases, the court "accord[s] substantial deference to its construction of pertinent statutes," Albemarle Corp. & Subsidiaries v. United States, 821 F.3d 1345, 1351 (Fed. Cir. 2016) (quoting SKF USA Inc. v. United States, 254 F.3d 1022, 1028 (Fed. Cir. 2001)), and defers to Commerce's interpretation of its statute as long as that interpretation is reasonable, Kyocera Solar, Inc. v. United States Int'l Trade Comm'n, 844 F.3d 1334 (Fed. Cir. 2016). Put another way, if Commerce's methodology is arbitrary and capricious, it is contrary to law and will be set aside. Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States, 701 F.3d 1367, 1374 (Fed. Cir. 2012); see also Rongxin III, 331 F. Supp. at 1405.

Commerce's government control presumption has been repeatedly upheld by the Federal Circuit and by this court as a permissible interpretation of its statutory authority, including in cases involving mandatory respondents. See, e.g., Diamond Sawblades, 866 F.3d at 1311 ("If a company from the NME country rebuts the presumption by showing its independence from state control, it

can qualify for a separate rate; if the company fails to rebut the presumption, however, it receives the single state-wide dumping rate."); see Changzhou Hawd Flooring Co., Ltd. v. United States, 848 F.3d 1006, 1009 (Fed. Cir. 2017) (noting that Commerce "presumes that each Chinese exporter and producer is state-controlled, and thus covered by a single China-wide antidumping-duty rate, but a firm may rebut the presumption"); Changzhou Wujin Fine Chem., 701 F.3d at 1370 (noting that an exporter or producer who fails to rebut the presumption of state control receives "a single state-wide rate" but that the presumption is rebuttable such that "a company that demonstrates sufficient independence from state control may apply to Commerce for a separate rate"); Rongxin III, 331 F. Supp. 3d at 1405–07.  China Mfrs. Alliance, 205 F. Supp. 3d 1325 (2017), cited by Rongxin, is inapposite and not controlling.  In Diamond Sawblades, the Federal Circuit clarified that China Mfrs. Alliance does not detract from the Federal Circuit's consistent position on the application of Commerce's government control presumption in NME cases. Diamond Sawblades, 866 F.3d at 1313 n.6; see also Rongxin III, 331 F. Supp. 3d at 1407 (distinguishing China Mfrs. Alliance).  Therefore, Rongxin is not entitled to a separate rate merely because it is a mandatory respondent, and Commerce's government-presumption methodology is in accordance with law.

## II. *1677m(d)*

Rongxin contends that "Commerce must bear responsibility for the state of the administrative record" and that it cannot apply facts available or AFA because it did not issue deficiency questionnaires pursuant to 19 U.S.C. § 1677m(d). Pl.'s Br. at 36–37 (citing Agro Dutch Indus. v. United States, 31 CIT at 2059 and China Kingdom Imp. Exp. Co. v. United States, 31 CIT 1329, 1355, 507 F. Supp. 2d 1337, 1361 (2007)).

This argument is unpersuasive. The burden of creating an adequate record rests with the interested parties, and this case does not present a situation, as alleged by Rongxin, where "a respondent must guess what Commerce needs and answer unlimited unasked questions, for fear that Commerce will use either facts available or adverse facts available." Pl.'s Br. at 39. "Commerce prepares its questionnaires to elicit information that it deems necessary to conduct a review, and the respondent bears the burden to respond with all of the requested information and create an adequate record." ABB Inc. v. United States, 42 CIT __, __, Slip Op. 18-156 (Nov. 13, 2018) at 27 (citing Nan Ya Plastics Corp. Ltd. v. United States, 810 F.3d 1333, 1337 (Fed. Cir. 2016); QVD Food Co. v. United States, 658 F.3d 1318, 1324 (Fed. Cir. 2011)). Here, Commerce clearly requested the Articles of Association applicable to the POR. Rongxin only provided Articles of Association applicable to part of the POR, despite knowing that the New Articles came into effect partway through the POR. Rongxin's answer to Commerce's question appeared complete, and Commerce did not discover until late in the review that the Articles provided did not cover the entire POR. See ABB Inc., Slip Op. 18-156 at 27–28 (noting that 19 U.S.C. § 1677m(d) did not apply because Commerce did not discover the deficiency until it had the opportunity to delve into the company's sales documents). Under these circumstances, "Commerce is not obligated to issue a supplemental questionnaire to the effect of, 'Are you sure?'" Id. at 27.

Rongxin's citations to Agro Dutch and China Kingdom are also unpersuasive. As an initial matter, subsequent cases from the Federal Circuit and this court have clarified that respondents are primarily responsible for the state of the record. See Nan Ya Plastics, 810 F.3d at 1337; QVD Food Co., 658 F.3d at 1324; ABB Inc., Slip. Op. 18-156 at 26–28. Moreover, the cases Rongxin cites are distinguishable. In Agro Dutch, 31 CIT 2047 (2007), Commerce issued a supplemental

Case 1:17-cv-00145-GSK   Document 43   Filed 01/08/19   Page 13 of 17

Court No. 17-00145                                                                                               Page 13

questionnaire pursuant to § 1677m(d), then stated that because the various questionnaire responses were inconsistent, Agro Dutch had misled Commerce. Id. at 2055. The court determined that this conduct amounted to an improper use of § 1677m(d), and that Commerce's initial request for information was vague. Id. Here, Commerce did not misuse a questionnaire pursuant to § 1677m(d), and its initial request for information was not vague. In China Kingdom, 507 F. Supp. 2d 1337 (2007), the respondent discovered the deficiency and tried to correct it one day into verification and well prior to the preliminary determination, but Commerce rejected it. By contrast, in this case, Rongxin, which knew when its Articles of Association came into effect, did not alert Commerce to the deficiency and at no time attempted to remedy this deficiency. Thus, the court cannot say that Commerce failed to comply with 19 U.S.C. § 1677m(d).[7]

### III. FA

Rongxin argues that Commerce's use of the Old Articles pursuant to facts available was unsupported by substantial evidence and contrary to law. Specifically, Rongxin alleges that the use of the Old Articles was actually AFA, rather than neutral facts available, and that Commerce manufactured a gap to fill in the record by disregarding the New Articles. The Government contends that Commerce's determination was appropriate because it applied neutral facts available, there was a gap to fill in the record because the New Articles were not effective until

---

[7] The Government argues that 19 U.S.C. § 1677m(d) applies only to AFA, not neutral facts available, and cites Ningbo Dafa Chemical Fiber Co., Ltd. v. United States, 580 F.3d 1247, 1252 (Fed. Cir. 2009) for support. In that case, however, it was "not contest[ed] that Commerce complied with § 1677m(d)," id. at 1252 n.2, which instead indicates that 19 U.S.C. § 1677m(d) applies. Moreover, the wording of § 1677m(d) does not limit its application to only adverse facts available, but rather speaks to the use of facts available generally. See § 1677m(d). Other case law also states that § 1677m(d) applies to both neutral and adverse facts available. See, e.g., ABB Inc., Slip. Op. 18-156 at 26 ("Commerce's authority to use other sources of information, however—including its authority to use an adverse inference—is subject to 19 U.S.C. § 1677m(d)") (citing 19 U.S.C. § 1677e(a),(b)).

two months into the POR, and no evidence on the record showed how the New Articles operated in practice. The court determines that Commerce's application of neutral facts available to the first two months of the POR was supported by substantial evidence and in accordance with law, but that Commerce failed to adequately justify using the Old Articles for the portion of the POR where the New Articles were effective.

Substantial evidence is "more than a mere scintilla," but "less than the weight of the evidence." Altx, Inc. v. United States, 370 F.3d 1108, 1116 (Fed. Cir. 2004). "A finding is supported by substantial evidence if a reasonable mind might accept the evidence as sufficient to support the finding." Maverick Tube Corp. v. United States, 857 F.3d 1353, 1359 (Fed. Cir. 2017) (citing Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)). "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight." CS Wind Vietnam Co. v. United States, 832 F.3d 1367, 1373 (Fed. Cir. 2016). This includes "contradictory evidence or evidence from which conflicting inferences could be drawn." Suramerica de Aleaciones Laminadas, C.A. v. United States, 44 F.3d 978, 985 (Fed. Cir. 1994) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 487 (1951)).

As discussed above, Commerce may use facts available to fill gaps in the administrative record. 19 U.S.C. § 1677e(a), (b). Commerce may also resort to AFA, but only when a respondent's failure to cooperate to the best of its ability caused the gap being filled. See 19 U.S.C. § 1677e(b); Nippon Steel, 337 F.3d at 1382. When applying AFA, Commerce may draw on (1) the petition for the investigation, (2) a final determination in the investigation, (3) any previous review under § 1675, or (4) any information placed on the record. 19 U.S.C. § 1677e(b).

In the IDM, Commerce explained its use of the Old Articles pursuant to neutral facts available as follows:

> Rongxin argues that the record rebuts the presumption that it does not operate free of government control because it operated autonomously from the government in making decisions regarding the selection of management. Specifically, it asserts that SITG was entitled to only one vote as a shareholder of Rongxin, has the ability to nominate only one candidate for election to the board of directors, and further, that a majority of votes is required to pass a resolution. We find, however, that the provisions of the Articles of Association cited by Rongxin, alone, are insufficient to demonstrate that it operated autonomously from the government in making decisions regarding the selection of management during the POR. Crucially, the effective date of the Articles of Association falls just over two months after the beginning of the POR, and the record is devoid of any information showing how the new Articles of Association operate in light of the conflicting scenarios of majority ownership and one vote per shareholder. As such, the record does not provide the necessary information that is required for the Department to determine whether Rongxin actually operated independently of the government . . .
>
> Although Rongxin asserts that the new Articles of Association in effect during the remainder of the POR establish that it operated free of government control in the selection of management, we find that this evidence, alone, is not dispositive. The record does not include any evidence to establish that Rongxin's operation in the latter part of the POR, i.e., after the effective date of the Articles of Associations provided by Rongxin, differed from the earlier part. Consequently, Rongxin has not rebutted the presumption of government control, and thus, we continue to find that for the remainder of the POR (other than the last month) the government, exercises, or has the potential to exercise, control over Rongxin's day-to-day operations, including the selection of management.

IDM at 14–15.

In this case, Commerce's use of the Old Articles for the two-month gap at the beginning of the POR was supported by substantial evidence and in accordance with law. Rongxin contends that any use of the Old Articles is necessarily AFA, because Commerce relied on a previous administrative review as the source of these articles. Pl.'s Br. at 25–26. However, the statute does not prescribe what sources Commerce may use when applying neutral facts available, let alone proscribe Commerce from using those listed in 19 U.S.C. § 1677e(b). Moreover, it was entirely reasonable for Commerce to rely upon a set of Articles of Association drawn from the previous administrative review because, logically, the Old Articles likely continued to apply until the New

Articles came into effect two months into the POR. Indeed, at no point does Rongxin dispute that the Old Articles were actually those in effect for the first two months of the POR.

Commerce's decision to replace the New Articles with the Old Articles, however, was unsupported by substantial evidence and contrary to law. As previously discussed, Commerce may only use facts available when there is a gap in the record to fill. Here, once the New Articles came into effect, there was no longer an evidentiary gap to fill. The Government and Commerce characterize the New Articles as creating an operational gap because "the record is devoid of any information showing how the new Articles of Association operate in light of the conflicting scenarios of majority ownership and one vote per shareholder" and "[t]he record does not include any evidence to establish that Rongxin's operation in the latter part of the POR, i.e., after the effective date of the Articles of Associations provided by Rongxin, differed from the earlier part." IDM at 14–15. However, the New Articles themselves provide evidence on how they operate, and Commerce pointed to no record evidence that suggested the New Articles were somehow inoperative or that Rongxin operated inconsistently with the New Articles after their effective date. Because Commerce identified no record information that supported its conclusion and ignored evidence to the contrary, its decision was not supported by substantial evidence. See CS Wind Vietnam Co., 832 F.3d at 1373; Suramerica, 44 F.3d at 985 (quoting Universal Camera Corp., 340 U.S. at 487).

Moreover, in previous reviews involving Rongxin, Commerce based its *de facto* analysis extensively on a detailed evaluation of the Old Articles without requiring extrinsic evidence of how the Old Articles operated. See Rongxin III, 331 F. Supp. 3d at 1398–1401, 1403–04 (detailing Commerce's reliance on the Old Articles when evaluating whether Rongxin had established *de facto* independence from Chinese government control). In contrast, here, Commerce undertook

no analysis of the New Articles, and did not explain in the IDM why it treated two such similar scenarios differently.  See SKF USA Inc. v. United States, 263 F.3d 1369, 1382 (Fed. Cir. 2001) ("[A]n agency action is arbitrary when the agency offer[s] insufficient reasons for treating similar situations differently.") (internal quotation and citation omitted); Huzhou Muyun Wood Co. v. United States, 42 CIT __, __, 324 F. Supp. 3d 1364, 1375 (2018), as amended (July 27, 2018).

## CONCLUSION

The court remands to Commerce for reconsideration, consistent with this opinion, of whether Rongxin has established *de facto* independence from the Chinese government such that it is entitled to a separate rate.  The court expresses no opinion on the outcome.  Commerce may, in its discretion, reopen the record.  Commerce shall file with this court and provide to the parties its remand results within 90 days of the date of this order; thereafter, the parties shall have 30 days to submit briefs addressing the revised final determination to the court and the parties shall have 15 days thereafter to file reply briefs with the court.

**SO ORDERED.**

                                                                                /s/  Gary S. Katzmann
                                                                                Gary S. Katzmann, Judge

Dated:  January 8, 2019
           New York, New York