Slip Op. 19-151

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| SHANDONG RONGXIN IMPORT & EXPORT CO., LTD.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | Before: Gary S. Katzmann, Judge<br>Court No. 17-00145 |

**OPINION**

[Commerce's Final Results of Redetermination Pursuant to Court Remand are sustained.]

Dated: December 2, 2019

John J. Kenkel, deKieffer & Horgan, PLLC, of Washington DC, argued for plaintiff. With him on the brief were Alexandra H. Salzman, Judith L. Holzman and J. Kevin Horgan.

Ashley Akers, Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendant. With him on the brief were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director. Of counsel on the brief was Brendan Saslow, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Katzmann, Judge: The court turns once again to the case of cased pencils. At issue is whether an exporter in a non-market economy ("NME")[1] has adequately established the independence from governmental control necessary to qualify for a separate antidumping duty rate apart from the countrywide antidumping duty rate. Before the court is the United States Department of Commerce's ("Commerce") Final Results of Redetermination Pursuant to Court

[1] An NME country is "any foreign country that [Commerce] determines does not operate on market principles of cost or pricing structures, so that sales of merchandise in such country do not reflect the fair value of the merchandise." 19 U.S.C. § 1677(18)(A).

Remand (Dep't Commerce May 8, 2019) ("Remand Results"), ECF No. 48-1, which the court ordered in Shandong Rongxin Import & Export Co. v. United States, 43 CIT __ (2019), 355 F. Supp. 3d 1365 ("Rongxin"). Shandong Rongxin Import & Export Co. ("Rongxin"), an exporter of pencils from the People's Republic of China ("China"), challenges Commerce's redetermination finding that Rongxin was not free of de facto government control and therefore is not entitled to a separate rate. Pl.'s Comments on Def.'s Results of Redetermination Pursuant to Court Remand ("Pl.'s Br."), June 7, 2019, ECF No. 51. Rongxin contends that the Remand Results do not accord with the court's remand order and that Commerce's conclusions are not supported by substantial evidence on the record. Pl.'s Br. The United States ("the Government") requests that the court sustain the Remand Results. Def.'s Resp. to Comments on Remand Results ("Def.'s Br."), June 24, 2019, ECF No. 52. The court sustains the Remand Results in its entirety.

## BACKGROUND

The court set forth the relevant legal and factual background of the proceedings involving Rongxin in greater detail in Rongxin, 355 F. Supp. 3d at 1369–72. Information pertinent to the instant case is set forth below.

In antidumping duty proceedings involving merchandise from an NME country, Commerce presumes that all respondents to the proceeding are government-controlled and therefore subject to a single country-wide antidumping duty rate. Diamond Sawblades Mfrs. Coal. v. United States, 866 F.3d 1304, 1311 (Fed. Cir. 2017). This presumption is strengthened where there is direct or indirect government majority ownership because "in the context of majority government ownership, potential control is, for all intents and purposes, actual control because the majority shareholder can typically control the operations of a company without actually removing directors or management since it is clear that directors or management could be removed." Zhejiang Quzhou Lianzhou Refrigerants Co. v. United States, 42 CIT __, __, 350 F. Supp. 3d

1308, 1317 (2018) (internal quotations omitted) (emphasis original) ("Zhejiang"). Nevertheless, respondents may rebut the presumption of government control, and thus become eligible for a separate rate, by establishing the absence of both de jure and de facto government control. Diamond Sawblades, 866 F.3d at 1310–11. Relevant to Commerce's determination here, an exporter can demonstrate the absence of de facto government control by providing evidence that the exporter: (1) sets its prices independently of the government and of other exporters; (2) negotiates its own contracts; (3) selects its management autonomously; and (4) keeps the proceeds of its sales. Zhejiang, 350 F. Supp. at 1314. If a respondent fails to establish its independence for even one of these prongs, Commerce continues to presume government control and applies the country-wide rate to that respondent. Id. at 1321.

On May 30, 2017, Commerce published the results of its administrative review of Certain Cased Pencils from the People's Republic of China for the period of review December 1, 2014 to November 30, 2015 ("POR") in which Commerce determined Rongxin had not demonstrated an absence of de facto government control and was thus ineligible for a separate antidumping duty rate. Certain Cased Pencils from China: Final Results, 82 Fed. Reg. 24,675 (Dep't Commerce May 30, 2017) ("Final Results"), and accompanying Issues and Decision Memorandum ("IDM").

During the POR, Rongxin was a corporation owned by eleven shareholders and led by a six-member board of directors ("Board"), nominated by the largest shareholders. Rongxin's Case Br. [to Commerce] at 16–17, P.R. 82. Rongxin was majority owned by Shandong International Trade Group ("SITG"). Decision Memorandum for the Preliminary Results of the 2014-2015 Antidumping Duty Administrative Review ("Decision Memo") at 6, P.R. 27. SITG is wholly-owned by the State-Owned Assets Supervision and Administration Commission, a Chinese government entity. Id. Furthermore, two months into the POR, Rongxin implemented new Articles of Association ("New Articles") to change its shareholder voting structure to allow for

"one shareholder, one vote" and maintained that "each of the six largest shareholders can nominate only one candidate for election to the board of directors." Rongxin's Case Br. [to Commerce] at 16–17, P.R. 82. In the final month of the POR, Rongxin became privately owned. Decision Memo at 6, P.R. 27. In the Final Results, Commerce concluded that the record indicated that the New Articles were not in operation during the POR and thus analyzed whether Rongxin was de facto government controlled by assuming the old Articles of Association ("Old Articles") still governed. Final Results and IDM at 15–16, P.R. 5. Commerce determined that Rongxin was "indirectly majority owned by a Chinese government entity, and that the company did not operate autonomously from the government in the selection of management," and therefore failed to rebut the presumption of de facto government control. Id. at 16.

Rongxin appealed the Final Results to the court, arguing that Commerce's disregard of the New Articles and resulting determination that Rongxin was de facto government controlled were not supported by substantial evidence on the record and contrary to law. Pl.'s Compl., June 13, 2017, ECF No. 3. In Rongxin, the court sustained the Final Results in part, but, after holding that "Commerce's decision to replace the New Articles with the Old Articles . . . was unsupported by substantial evidence and contrary to law," remanded to Commerce for reconsideration of the issue "whether Rongxin has established de facto independence from the Chinese government such that it is entitled to a separate rate." 355 F. Supp. 3d at 1377. The court held Commerce's decision not to analyze the New Articles because of an absence of an explanation of their operation was arbitrary and granted Commerce the discretion to reopen the administrative record if needed. Id.

On April 19, 2019, Commerce issued its Draft Remand Redetermination. A.R. 1, May 21, 2019, ECF No. 49-3. Rongxin submitted timely comments in response to Commerce's Draft Remand Redetermination. Id. Commerce issued its Remand Results on May 8, 2019. Id. Commerce again found that "Rongxin has not demonstrated an absence of de facto governmental

control, and, therefore, is not entitled to a separate rate." Remand Results at 1. In the redetermination, Commerce examined evidence of de facto government control in Rongxin's selection of management. Remand Results at 7–9. Commerce's analysis centered on evidence on the record that SITG, wholly owned by a state-owned enterprise, was the majority shareholder of Rongxin. Commerce ultimately concluded that Rongxin failed to rebut the presumption of de facto government control because SITG was its majority shareholder and record evidence indicated that SITG retained actual or potential influence over the Board, which in turn selects management. Remand Results at 9–10. Thus, Commerce concluded that Rongxin did not rebut the presumption of de facto government control and was not entitled to a separate rate. Remand Results at 18. Furthermore, despite becoming privately owned in the last month of the POR, Rongxin did not have any sales during that month, and, therefore, Commerce could not calculate an individual cash deposit rate, as Commerce explained in its response to Rongxin's comments. Remand Results at 25.

Rongxin submitted its comments on the Remand Results to the court on June 7, 2019, including an attachment of its comments to Commerce's Draft Remand Redetermination. Pl.'s Br. Rongxin argues that Commerce did not address the court's concern on remand and that the Remand Results again are not supported by substantial evidence on the record. Pl.'s Br. at 1. Rongxin contends that Commerce's decision, instead of accepting the implementation of the New Articles as dispositive of independence from de facto government control, relies on conclusions and inferences that are not supported by substantial evidence on the record in its analysis of the New Articles. Pl.'s Br. at 3–4. Finally, Rongxin argues that the cash deposit rate for future entries should not be determined based on any adverse finding in the administrative review regarding government control because Rongxin was privately owned during the last month of the POR. Pl.'s Br. at 6.

The Government filed its reply to these comments on June 24, 2019 arguing that the Remand Results are consistent with the court's order in Rongxin. Def.'s Br. The court held oral argument on November 7, 2019. Oral Argument, Nov. 7, 2019, ECF No. 56.

**JURISDICTION AND STANDARD OF REVIEW**

The court has jurisdiction over the action pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and 1561a(a)(2)(B)(m). The court reviews the Remand Results "for compliance with the court's remand order." Beijing Tianhi Indus. Co. v. United States, 39 CIT __, __, 106 F. Supp. 3d 1342, 1346 (2015) (citations omitted). The court sustains Commerce's antidumping determinations, findings, and conclusions unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

**DISCUSSION**

Commerce's Remand Results are consistent with the court's remand order and previous opinion. See Rongxin, 355 F. Supp 3d 1365. Commerce's determination of de facto government control of Rongxin stems from the failure of Rongxin to show independence in the selection of management, a dispositive prong in rebutting the presumption of de facto government control. Rongxin argues that, contrary to the court's order, Commerce unjustifiably continued to disregard the New Articles. However, Commerce did in fact analyze the New Articles in the Remand Results and found that Rongxin failed to rebut the presumption of majority government control because of SITG's majority control and the continuity of the Board. The court therefore sustains the Remand Results as supported by substantial evidence on the record and in accordance with law.

### *I. Commerce's Determination that Rongxin Failed to Rebut the Presumption of De Facto Government Control Is Supported by Substantial Evidence.*

Commerce makes administrative review determinations based on the totality of the circumstances, as supported by the substantial evidence on the record. Previous cases from the court indicate that the presumption of de facto government control is quite strong for respondents with a government majority shareholder. E.g., Zhejiang, 350 F. Supp. 3d at 1316–17 (holding an absence of evidence of control was insufficient to rebut the presumption; majority government ownership, through the mere threat of control of the board, could signify de facto control of the selection of management (internal citations omitted)). In keeping with that principle, Commerce here stated, consistent with several other recent determinations and the Advanced Technology line of cases,[2] "that respondents that are wholly or majority owned by, and thus under the control of, companies with majority government ownership, are subject to de facto government control [because] 'controlling shareholders present a significant potential for manipulation,' especially with regard to the selection of management and the disposition of profits." Remand Results at 9–10 (quoting Advanced Tech., 35 CIT at 1388).

Consequently, Commerce determined that the totality of the circumstances indicated that Rongxin was not free of de facto government control in the selection of management. First, Commerce analyzed SITG's majority ownership in light of the New Articles. Commerce found

---

[2] The Advanced Technology line of cases refers to litigation in response to Commerce's Diamond Sawblades proceeding. See Diamond Sawblades and Parts Thereof from the People's Republic of China, 71 Fed. Reg. 29, 303 (Dep't Commerce May 22, 2006), as amended, 71 Fed. Reg. 35,864 (Dep't Commerce June 22, 2006). There, the domestic industry challenged Commerce's grant of a separate rate to Advanced Technology & Materials Co. Ltd., Beijing Gang Yan Diamond Products Company, and Gang Yan Diamond Products, Inc. Commerce clarified its analysis of de facto control for majority owned government entities after a series of remand orders from this court. See Advanced Tech. & Materials Co. 35 CIT 1380 (2011); Advanced Tech. & Materials Co. v. United States, 26 CIT 1576, 885 F. Supp. 2d 1343 (2012); Advanced Tech. & Materials Co. v. United States, 37 CIT __, 938 F. Supp. 2d 1342 (2013), aff'd, 581 F. App'x. 900, 901 (Fed. Cir. 2014).

the "one shareholder, one vote" principle in the New Articles to be inconsistent with traditional majority ownership rights and the Chinese Company Law China which typically entitles majority shareholders the right to exercise control over the selection of management through Board elections. Remand Results at 9–10. Commerce made a reasonable inference based on the evidence on the record and typical shareholder expectations that SITG, as a majority shareholder, must have retained some control or benefit in exchange for its majority ownership in Rongxin. Remand Results at 10–11. The court agrees with the Government's characterization that this evidence is a red flag which contributed to the totality of the circumstances.

Commerce also noted the continuity in the composition of the Board, which was elected while SITG had majority voting power. Remand Results at 13–14. Because the New Articles require a majority vote to effectuate a Board action and the majority composition of the SITG elected Board did not change throughout the POR nor was there evidence on the record of a Board vote, it was reasonable for Commerce to conclude that there was no indication from the evidence that SITG had given up its majority control over the Board. See also Remand Results at 14–15. Plaintiff argues that Commerce acknowledges that two Board members did change after the implementation of the New Articles, which is therefore evidence that the Board did change with the implementation of the New Articles. Pl.'s Br. 2–3. However, as Commerce found, because SITG had the majority voting share when four of the Board's six directors were elected, the court agrees that a majority of the Board members potentially remained under SITG influence even after SITG lost its majority voting power. The court is persuaded by the Government's contention that "Commerce did not make a determination regarding the two remaining seats because there is no evidence on the record indicating who occupied those seats." Def.'s Br. at 3. Therefore,

affirmative evidence on the record did not conclusively show that SITG did not retain a controlling influence over the Board after the New Articles went into effect.[3]

Lastly, the questionable timing of the implementation of the New Articles also contributed to Commerce's determination. The New Articles were implemented just two months after the results of the previous POR administrative review results were published. Remand Results at 15. While not dispositive to the analysis, given SITG's majority ownership, the court agrees with Commerce's determination that the timing contributes to the totality of circumstances of de facto government control. Remand Results at 15. Because Rongxin provided no affirmative evidence rebutting the presumption of control and the totality of the circumstances indicated that SITG retained potential control over the Board and the selection of management, Commerce's conclusion that Rongxin was de facto controlled by SITG was supported by substantial evidence on the record.

***II. Commerce's Determination That No Cash Deposit Rate Could Be Calculated For One Month of Private Ownership In Which Rongxin Made No Sales Into the United States Was In Accordance With Law.***

Finally, the parties disagree as to Rongxin's required cash deposit rate. The applicable statute, 19 U.S.C. § 1673d(c)(1)(A)(ii), directs that Commerce "shall order the posting of a cash

[3] Rongxin points to evidence that the Board rejected an SITG proposal in an attempt to rebut this conclusion. Pl.'s Br. at 5. Commerce argued that "[t]his information does not establish that the board of directors . . . operated independently of government control in the selection of its managers." Remand Results at 23. The Government contends that there was a lack of evidence on the record about the nature of the rejected proposal and whether the rejection was the result of a vote or a withdrawal of the Proposal. Oral Argument. Unlike other minutes on the record which clearly indicate that a Board vote was held, this piece of evidence did not include any indication that a formal vote was held. Oral Argument. Because inconsistent conclusions could be drawn, Commerce reasonably concluded that Rongxin did not rebut the presumption that SITG retained potential de facto control of Rongxin's Board. See Suramerica de Aleaciones Laminadas, C.A. v. United States, 44 F.3d 978, 985 (Fed. Cir. 2016) (explaining that substantial evidence includes "contradictory evidence or evidence from which conflicting inferences could be drawn") (internal citations omitted).

deposit . . . for each entry of the subject merchandise in an amount based on the estimated weighted average dumping margin or the estimated all-others rate, whichever is applicable." Rongxin contends that it is entitled to a separate rate going forward because it became a privately-owned company in the final month of the POR. Pl.'s Br. at 6. However, because Rongxin made no sales during that month, Commerce states that it is unable to calculate a separate rate based on the statutory language, "estimated weighted average dumping margin." Remand Results at 25. The court agrees. The plain language of the statute indicates that a cash deposit rate should not be calculated based on one month of private ownership in which no sales were made. Therefore, Commerce's decision was in accordance with law.

**CONCLUSION**

For the foregoing reasons, Commerce's Remand Results are consistent with the previous opinion and supported by substantial evidence. They are therefore sustained in their entirety.

**SO ORDERED.**

*/s/ Gary S. Katzmann*
Gary S. Katzmann, Judge

Dated: December 2, 2019
New York, New York